# Dame, Seymour & Co.'s Appeal.

1. Materials were furnished for the erection, &c., of improvements, &c., on premises in Venango county, the occupier having at the time no *written* lease; he afterwards obtained such lease and a claim was filed for the materials.　*Held*, that no lien attached under the Act of April 8th 1868 (Mechanics' Liens in Venango County).

2. Esterley's Appeal, 4 P. F. Smith 192, explained.

3. The Act of 1868 is a remedial statute, and should have a liberal interpretation in advancement of the remedy contemplated.

4. *Quoties in verbis, nulla est ambiguitas, ibi nulla expositio contra verba fienda est,* is a cardinal canon of interpretation.

5. The words, the context and the subject-matter are to be considered equally with the effects and consequences or the reason and spirit, if not before them.

October 19th 1869.　Before Thompson, C. J., Read, Agnew, Sharswood and Williams, JJ.

Appeal No. 71, of October and November Term 1869, from the
12 P. F. Smith—27

| 62 | 417 |
| 203 | ⁵305 |

| 62 | 417 |
| 38SC | ⁴459 |

decree of the Court of Common Pleas of *Venango county*, in the distribution of the proceeds of the sheriff's sale of the property of E. W. Riddle.

The report of the auditor, George R. Snowden, Esq., shows the following facts in the case : Riddle being in the occupancy of lot No. 37, of the Armstrong farm in Venango county, Dame, Seymour & Co., from the 25th of August to the 3d of September 1868, inclusive, furnished to him materials, &c., which are the subject of a mechanics' lien under the Act of April 8th 1868, relating to mechanics' liens in Venango county (Pamph. L. 752), viz. :—

"That all persons furnishing materials about the erection, construction or repair of any engine, engine-house, derrick, tank, machinery, wood or iron improvement, or for or about any leasehold, lot or parcel of ground, or material furnished necessary for the improvement or development thereof, *held* by *written lease* for any term of years, and which shall or may be constructed, erected or repaired by the tenants or lessees of said leased estate, or for them or for their use and benefit, shall have a lien upon all such engines, &c., &c., as may be upon or pertaining to said leasehold, lot or parcel of ground at the time such claim may be filed, as hereinafter provided, together with the lease, lot or parcel of ground on which the same is situated, for the price," &c.

On the 10th of September 1868, the owners of lot No. 37 made a written lease to Riddle for the premises.  On the 23d of October 1868, William M. Cuthbert obtained judgment against Riddle, and on the same day issued an execution, under which Riddle's property was sold on the 10th of November.  On the 12th, Dame, Seymour & Co. filed their claim for the materials furnished as a lien against the leasehold of lot No. 37, machinery, &c.

The auditor reported that Dame, Seymour & Co. having a *written* lease of the premises at the time they filed their claim, although they had none when the materials were furnished, their lien attached and they were entitled to be paid from the fund in court of the proceeds of sale.  He reported also an alternative distribution, giving the money in court to Cuthbert, under his execution, if the court should be of opinion that the want of a *written* lease when the goods were furnished prevented Dame, Seymour & Co. from acquiring a lien.

Four exceptions were filed to the report, the 2d of which was that Riddle did not hold by a written lease when the articles were furnished by Dame, Seymour & Co.  After argument on the exceptions the court (Trunkey, P. J.) made this decree :—

"On the facts found by the auditor it is considered that Dame, Seymour & Co. had no lien, and the report of the auditor so far as it appropriates the fund to them is set aside ; and it is adjudged and decreed that the fund be appropriated according to the alter-

native distribution, giving the proceeds of sale after payment of costs, to the execution in favor of W. M. Cuthbert."

Dame, Seymour & Co. appealed to the Supreme Court, and assigned this decree for error.

*R. Sherman* (with whom was *M. C. Beebe*), for appellants, referred to Act of February 17th 1858, Pamph. L. 29; Act of 1868, *supra*. Remedial statutes are to be liberally construed: 2 Bl. Comm. 86; 1 Kent's Comm. 509, 515, 519; Parsons on Contracts 491, *et seq.*; Commonwealth *v.* Penna. Ins. Co., 1 Harris 166; Esterley's Appeal, 4 P. F. Smith 192; McMullin *v.* McCreary, Id. 230. An equitable estate is the subject of a lien which attaches to the after-acquired legal estate: Carkhuff *v.* Anderson, 3 Binn. 4; Ely *v.* Beaumont, 5 S. & R. 124; Lyon *v.* McGuffey, 4 Barr 126; Gaule *v.* Bilyeau, 1 Casey 521.

*Hancock* (with whom were *W. H. James* and *H. A. Miller*), for appellees, referred to Act of 1868, Esterley's Appeal, McMullin *v.* McCreary, *supra*; Bolton *v.* Johns, 5 Barr 149.

The opinion of the court was delivered, January 3d 1870, by

SHARSWOOD, J.—The three assignments of error are all resolvable into one question, whether upon the true construction of the Act of Assembly of April 8th 1868, entitled "An act relating to liens of mechanics, material-men and laborers, upon leasehold estates and property thereon in the county of Venango," (Pamph. L. 752), it is essential to the creation and validity of the lien, therein provided for, that there should be a written lease for a term of years in existence at the time the work was done or the materials furnished. The auditor, to whom the distribution of the fund was committed, reported it as his opinion, that it is sufficient if there be a written lease executed before the claim or statement is filed, and he has sustained it with great ability and force. The court appear to have adopted a contrary view, and awarded a distribution different from that recommended by him. We have not the advantage of an opinion from them, which is much to be regretted. Our brethren in the inferior courts would do well to consider that it would be a very great assistance to us to be informed of the grounds of their judgments, especially in cases of this kind. Four exceptions were filed to the auditor's report below. Upon which of these exceptions the decree was based, we are left to conjecture. All that the decree states is that it was considered that Dame, Seymour & Co. had no lien.

We have, however, come to the conclusion that upon the facts, as reported by the auditor, the decree was right. The appellants furnished materials to the premises between August 25th and September 3d 1868. The lease to Riddle, the tenant, was dated

[Dame's Appeal.]

September 10th 1868, seven days after the last of the articles charged in the appellants' bill were sold. Riddle had possession of the lot, engine, &c., before, but how does not appear. It is evident that if the act requires the leasehold interest to be by writing at the time the materials were furnished, Dame, Seymour & Co. had no lien. It may be proper to premise that although in Esterley's Appeal, 4 P. F. Smith 192, on the construction of a similar Act of February 17th 1858, applying to Luzerne and Schuylkill counties (Pamph. L. 29), it was said by Woodward, C. J., that "the judicial mind ought to incline to a strict construction of the terms of the statute, upon the principle that statutes in derogation of the common law and contrary to the general policy of the public, are always to be strictly construed," nothing more could have been meant than to apply the familiar rule that upon a doubtful question of construction, the argument from inconvenience has great force—not that it was competent for the judiciary to set up its views of the general policy of the public against those of the legislature. We may personally lament local legislation and the multiplication of liens—especially on personal property—as the fruitful source of litigation, and prejudicial not merely to the public but even to those intended to be benefited, but these considerations ought not to have any controlling influence upon our judgments. The act in question is not a penal but a remedial statute, and should have a fair and liberal interpretation in advancement of the remedy contemplated and provided by the legislature. We must endeavor to discover the intention by the light which the statute itself furnishes. It is a cardinal canon of interpretation, both of deeds and statutes, expressed in the maxim *quoties in verbis, nulla est ambiguitas, ibi nulla expositio contra verba fienda est:* Broom's Legal Maxims 555. The words—the context—the subject-matter—are to be considered equally if not before the effects and consequences—or the reason and spirit. In the case before us, if we take the words in their plain grammatical connection the meaning seems clearly expressed that the furnishing materials, and the holding by written lease, should be concurrent in time, as both are indisputably essential to the creation of a valid lien. " All persons furnishing materials for or about the erection, construction or repair of any engine, &c., upon any leasehold, lot or parcel of ground, &c., held by written lease for any term of years, &c., shall have a lien upon all such engine or engines, &c., together with the lease, lot or parcel of ground on which the same is situated, for the price and value of the materials so furnished." The clause which confines the lien as to the engines, material, machinery, buildings, tanks, wood or iron improvements to such as may be upon or pertaining to the leasehold, lot or parcel of ground at the time the claim may be filed, draws a distinction between these movables or fixtures and

the lease itself, which rather confirms than weakens the inference that the lease must have been in existence at the time the materials were furnished. It would seem to follow that as to the lease the lien was to date from the time the materials were furnished, though as to the movables and fixtures only from the time the claim was filed. It is remarkable that in the second section—which gives a lien for work and labor done—this clause is not introduced. Yet in the seventh section, in which provision is made against the removal of the movables and fixtures, such removal is declared to be unlawful only from and after the filing of any claim, making no distinction in this respect between claimants for work and materials.

There are, however, other parts of the act which throw light upon this question. After providing, in the third section, "that every person entitled to a lien by the provisions of this act shall file in the office of the prothonotary of the Court of Common Pleas of the county in which such leasehold and property is situated, within three months from the time the last work was done or last materials furnished, a statement of his claim," the fourth section declares that "every such debt, as aforesaid, shall be a lien, as aforesaid, for the period of six months after the last work shall be done or the last materials furnished, although no claim shall have been filed therefor, and no longer." This provision would seem to fix the time when the lien is to attach to be at least as early as the date of the last work done or materials furnished, for it declares that it shall be a lien for the period of six months from that date. The claim of the appellants was not a lien at the time the last materials were furnished, for there was then no written lease. Had there never been a written lease it never would have come into existence. When then did it commence? The contention on their behalf seems to be that provided a written lease is executed before the claim is filed, the lien shall take effect by relation from the time the materials were furnished. This must logically follow from their argument if it be sound. Cases are referred to which have been decided under the General Mechanics' Lien Law, to the effect that an equitable estate, under an agreement to purchase, may be the subject of the lien, which will attach like a judgment to the legal estate subsequently acquired. But surely this could not have been the intention of the legislature in the act now before us. The cases are not parallel, for the one relates to a freehold interest and the other to a chattel. If the execution of an unprivileged creditor were levied upon the interest of the tenant, under a verbal letting, after the materials furnished or work done, it surely cannot be pretended that he would be postponed by the subsequent execution of a written lease. If such a lessee should assign his interest to a bonâ fide purchaser without notice, and afterwards within the three months procure a written

lease, which of course would enure to the use of his assignee, would the claims for work done and materials furnished, dead before, start into life and oust him from his possession? Yet these would be logical consequences if the claims of laborers and material-men, could thus be galvanized. The moment we depart from the plain words of the statute according to their ordinary and grammatical meaning, in a hunt for some intention founded on the general policy of the law, we find ourselves involved in a "sea of troubles." Difficulties and contradictions meet us at every turn. The auditor thinks that this construction will lead to fraud—that the operators, if they discover that the liability to liens depends upon their having a written lease, will be content to work under verbal lettings or agreements not amounting to actual leases. But where would be the fraud of that? If the laborer or material-man is not willing to trust the personal credit of the operator, let him inquire and refuse to give credit unless there is a written lease in existence at the time the work is done or the materials furnished.

Decree affirmed, and appeal dismissed at the cost of the appellants.