## Hanson et al. v. McKean County.

*Taxes — Assessment — Reduction — Destruction of buildings — Acts of April 15, 1834, and May 8, 1909.*

Voluntary destruction of buildings by the owners of land is such destruction as to entitle them to a reduction in the tax assessment within the provisions of the Act of April 15, 1834, P. L. 509, as amended May 8, 1909, P. L. 491.

Case stated to determine right to have tax assessment reduced. C. P. McKean Co., Feb. T., 1927, No. 41.

*Mullin & Woods,* for plaintiffs.

*F. D. Gallup,* County Solicitor, for defendant.

BOUTON, P. J., June 10, 1927.—As appears by the record of the case stated, Oscar Hanson and Julius Carlson, plaintiffs, are the owners of 103 acres of land in Norwich Township, McKean County, Pennsylvania, including all improvements and buildings thereon.

That at the regular triennial assessment made in the fall of 1924, said lands were assessed to the Sager Jar Company, which company was at that time owner of said lands; that the said assessment was as follows:

Warrant, 2718; sub or lot No. 75; acres improved, 98; houses, 40; offices, 1; barn, 1; mills, 1; real estate, $20,000; horses, 2; value, $50; real and personal estate, total $20,050.

No appeal was taken by the Sager Jar Company from the amount fixed by the board of revision for the triennial period, and that the taxes as assessed for the year 1925 were paid by the Sager Jar Company on the basis of the valuation fixed in the regular triennial assessment aforementioned.

That at the time the lands were acquired by purchase by the plaintiffs by deed dated Sept. 10, 1925, there was situated on these lands buildings of the following description: Forty-one private dwelling-houses, three stave sheds, one mill, two batch buildings, one dry kiln and two small factory buildings.

That prior to Dec. 15, 1925, the date on which the assessor made his return of assessments, the present owners, the plaintiffs, had torn down and removed from the premises thirteen of the forty-one dwelling-houses, of an average value of $70 per house, and that at the present time six dwelling-houses are the only improvements on the said lands.

That at the last subsequent intertriennial assessment, the assessor assessed the lands to the plaintiffs in the sum of $20,000, and on March 15, 1926, the plaintiffs applied to the commissioners for a reduction in valuation because of the buildings having been destroyed, the owners asking for an abatement in the amount of the valuation fixed by the last subsequent intertriennial assessment as follows: For the year 1926, a sum of $1500; for the year 1927, the sum of $17,000.

The commissioners were of the opinion that no abatement or reduction should be made, because the voluntary destruction of the buildings which took place was not such a destruction as to bring the matter within the provisions of the Act of April 15, 1834, P. L. 509, as amended by the Act of May 8, 1909, P. L. 491, and agreed that the case be stated for the opinion of the court in the nature of a special ruling.

The solicitor for the county urges that the Act of April 15, 1834, P. L. 509, does not contemplate a voluntary tearing down or destruction of the buildings, but that it only means destruction by fire, flood, cyclone, etc., and seeks to have us read into the act such a restricted meaning. The act is as follows:

Hanson et al. *v.* McKean County.

"At the time and place fixed for the appeal, which in each of the two years after the triennial assessment shall be held in the commissioners' office of the proper county, the commissioners shall attend and hear all persons who may apply for redress, and grant such relief as to them shall appear just and reasonable: Provided, that the commissioners shall not make any allowance or abatement in the valuation of any real estate in any other year than that in which the triennial assessment is made, *excepting where buildings or other improvements have been destroyed,* or where coal, ore or other minerals assessed under the triennial assessment have been mined out subsequently to such triennial assessment, in which cases such allowance or abatement shall be made."

It is a well established rule of construction that where the words of an act are clear and there is no ambiguity, they will be presumed to carry a legislative intent, and the court will construe the act according to the plain meaning of its terms: Mercer *v.* Watson, 1 Watts, 330; Dame's Appeal, 62 Pa. 417; County *v.* Leibold, 107 Pa. 407; Erie County *v.* Erie Water Works Commissioners, 113 Pa. 368.

In our opinion, there is no ambiguity and no question as to the meaning of the language of the act. The Century Dictionary defines the word "destroy" as follows: "1. To pull down; unbuild (that which has been built); demolish."

The New Oxford Dictionary defines the word "destroy" as follows: "1. To pull down or undo (that which has been built); to demolish, raze to the ground."

Webster's New International Dictionary gives the following definition for the word "destroy:" "1. To unbuild; to pull or tear down; to separate violently into its constituent parts; to break up the structure and organic existence of; to demolish." See, also, Chestnut Hill Iron Co.'s Appeal, 6 Lanc. Law Rev. 137.

This identical question was decided by the late Hon. John Ormerod, President Judge of Potter County, on Jan. 1, 1914, in the case of Pennsylvania Stave Co.'s Appeal, 23 Dist. R. 399. In delivering the opinion of the court, he said: "We have not been able to find any decision by the appellate court which squarely decides this proposition, and the only definition of the word destroy which we are able to find is the same as that which is found in Webster's Dictionary, which defines destroy as follows: 'To unbuild; to pull or tear down; to separate violently into its constituent parts; to break up the structure and organic existence of; to demolish;' and gives the synonyms 'raze, dismantle and demolish.' "

The 34th section of the Act of April 10, 1849, P. L. 570, provides for the reassessment in the intermediate years when buildings have been erected. There is then the power to increase the assessment when the buildings have been voluntarily constructed upon the land, and also the power to reduce when buildings have been voluntarily destroyed and removed—thus giving us a balanced and equitable system for the assessment of taxes on improved land. It certainly would work a great injustice if a man should tear down a building upon one lot and reconstruct it upon another lot, that the commissioners or assessor could make no change in the assessment of the first lot for the destruction of the building, but would have to reassess and increase the valuation of the second lot upon which the building was rebuilt. The law does not contemplate that any citizen shall pay taxes twice upon the same property, nor that he shall pay upon property which he does not actually own; it contemplates an assessment of taxes upon a fair and equitable basis.

Hanson et al. *v.* McKean County.

We are, therefore, of the opinion that the voluntary destruction of these buildings by the owners, Oscar Hanson and Julius Carlson, is such a destruction as to come within the provisions of the 13th section of the Act of April 15, 1834, P. L. 509, as amended by Act of May 8, 1909, P. L. 491, and under the stipulation contained in paragraph 8 of the case stated.

It is now, June 10, 1927, ordered that the Commissioners of McKean County be authorized and are directed to reduce the subsequent intertriennial assessment to the sum of $18,500 for the year 1926, and to the sum of $3000 for the year 1927.                              From E. G. Potter, Smethport, Pa.