## Commonwealth, Appellant, *v.* Wolfgang.

Submitted October 15, 1935.

Before KELLER, P. J., BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Richard D. Laird,* District Attorney, *Charles J. Margiotti,* Attorney General, *George W. Keitel,* Assistant Deputy Attorney General, and *William Anderson, Jr.,* for appellant.

*James Gregg,* and *Wm. J. McDowell, Jr.,* for appellee.

OPINION BY STADTFELD, J., December 18, 1935:

This is an appeal from the order of the Court of Quarter Sessions of Westmoreland County, by COPE-

LAND, P. J., granting a motion to quash information against the appellee for violation of Section 1002 (c) of The Vehicle Code.

On July 17, 1935, an information was filed before Frank R. Komatz, Justice of the Peace for Hemphill Township, Westmoreland County, alleging that the defendant, Howard Wolfgang, had violated Section 1002 (c) of The Vehicle Code. The information set forth that the speed of the defendant's vehicle had been timed over a measured stretch of one-eighth of a mile by two officers, and that such vehicle had proceeded over the measured stretch in ten seconds, or at a speed of forty-five miles per hour.

The hearing before the Justice of the Peace was waived in accordance with The Vehicle Code, and the case was listed for hearing on August 23, 1935, in the Court of Quarter Sessions. At that time counsel for defendant moved to quash the information on the ground that it did not set forth that the measured stretch of one-eighth of a mile was within a business or residence district, where twenty-mile speed limit signs were erected. The Court granted the motion and ordered the information quashed. No testimony was taken, other than that of a Sergeant of the Highway Patrol, who testified that the one-eighth mile stretch over which the speed was timed, was located in a rural section where there were no "Twenty-mile Speed Limit" signs. This appeal was then taken from the Order of Court.

Section 1002 (d) of The Vehicle Code, P. L. 1929, 905, relates to the manner in which speed may be timed under varying conditions, and provides as follows: "(d). When the rate of speed of any vehicle is timed, on a measured stretch of any highway within a business or residence district, where 'TWENTY MILE SPEED LIMIT' signs are erected, as provided in this section, for the purpose of ascertaining whether or not the

operator of such vehicle is violating a speed provision of this act, such time shall be taken by not less than two (2) peace officers, one of whom shall have been stationed at each end of such measured stretch, and no conviction shall be had upon the unsupported evidence of one (1) peace officer, except as hereinafter provided, and no such measured stretch shall be less than one-eighth (⅛) of a mile in length. Under all other conditions, the rate of speed may be timed, for a distance of not less than one-quarter (¼) mile, by a peace officer using a motor vehicle equipped with a speedometer tested for accuracy within a period of thirty (30) days prior to the alleged violation." The language in this section of the act is clear and unambiguous and no construction is necessary to ascertain its meaning. It is a complete answer to the question before the Court, and should be sufficient to conclude the controversy.

In Bradbury v. Wagenhorst, 54 Pa. 180 (1867), the court said at page 182: "...... Whatever may have been the legislative thought, no ambiguity exists in what they have said, and when the words of a statute are plainly expressive of an intent, the interpretation must be in accordance therewith."

As stated in the opinion of the lower court: "There is no ambiguity in this section of the Act. It provides two methods of timing the speed of motor vehicles. In plain language, it provides for the so-called 'speed trap' method in business or residence districts, where 'Twenty Mile Speed Limit' signs have been erected. In equally plain language, it provides for timing speed 'under all other conditions' by means of a motor vehicle whose speedometer has been checked for accuracy within thirty days and over a measured stretch of one-quarter (¼) mile."

The statute is penal in nature and must be strictly construed. As stated by Mr. Justice STEWART in Commonwealth v. Exler, 243 Pa. 155, 89 A. 968, on page

163: "...... here we encounter the rule of interpretation that forbids any construction of a penal statute that would extend its meaning beyond its words. No person is to be made subject to a penal statute by implication, all doubts concerning their interpretation are to preponderate in favor of the accused: Bishop's Criminal Law, sec. 225. ...... The doctrine is that, when an offense is created by statute, and the same statute prescribes the penalty or the mode of procedure or anything else of the sort, only that which the statute provides can be followed: Bishop's Criminal Law, sec. 278." See also Commonwealth v. Berdenella, 288 Pa. 510, 136 A. 791; Commonwealth v. American Car and Foundry Company, 203 Pa. 302, 52 A. 326.

The plain purpose of this Act of Assembly was to abolish "speed traps" in the smaller villages and boroughs of the Commonwealth. This is evident from a consideration of the Act in force when this Code was passed (Act of May 11, 1927, P. L. 886, Section 1002). Under the Act of 1927, all speed violations were to be timed on a measured stretch of highway, one-eighth of a mile in length by two peace officers. The Act of 1929 restricts this means of detection exclusively and without ambiguity, to business and residential districts where "Twenty Mile Speed Limit" signs have been erected.

The Act then proceeds to prescribe a method of detection for all other speed violations, which is as follows: "Under all other conditions, the rate of speed may be timed, for a distance of not less than one-quarter ($\frac{1}{4}$) mile, by a peace officer using a motor vehicle equipped with a speedometer tested for accuracy within a period of thirty (30) days prior to the alleged violation."

The intention of the legislature in the Act of 1929 is clearly indicated by the provision for different methods of detection under the different conditions specified.

We cannot agree with the contention of the Commonwealth that The Vehicle Code of May 1, 1929, P. L. 905, in Section 1002 (d) as amended, does not limit peace officers in their method of timing speed on any highway within or without a business or residential district, where twenty-mile speed limit signs are not erected.

The Vehicle Code provides certain speed violations, to which neither method of detection can be applied: 1. Speeds of more than 10 miles per hour when passing street cars taking on or discharging passengers, etc. 2. Speeds of more than 15 miles per hour when passing a school in recess, etc. 3. Speeds of more than 20 miles per hour when approaching grade crossings, etc. 4. Speeds of more than 20 miles per hour when approaching certain intersections. In these instances, there can be no "measured stretch of one-eighth of a mile," nor can a motorcycle follow such operator for the prescribed quarter of a mile.

The evident purpose of Section 1002 (d) was to prevent the setting up of speed traps except in residential and business districts, leaving all other violations of the law, excepting those mentioned, for which no method is provided, to the method of ascertainment by motorcycle for a distance of one-quarter of a mile. The Code leaves much to be desired, but the language used in the section in question leaves, in our opinion, no other construction than the one we have indicated.

The construction contended for by the Commonwealth, would require the addition of words not found in the statute. As stated by this court in Commonwealth v. Gouger, 21 Pa. Superior Ct. 217, at page 229: "But where an enactment is plain and sensible, and, according to any meaning, broad or narrow, popular or technical, which may be ascribed to the words, does not apply to the case in hand, it is not permissible for the courts to add or omit words, in order to make it

so apply, even though it may be clear to them that the case is as fully within the mischief to be remedied as the cases provided for. This would be, not to construe, but to amend the law ......"

In Grayson v. Aiman, Inc., 252 Pa. 461 (1916), 97 A. 695, the court said, at pages 465, 466: "The argument concedes, of course, that it is the legislative intent that governs in all statutory construction, but it overlooks the fundamental rule that courts in seeking for the legislative intent must find it in the statute itself; that unless good ground can be found in the statute for restraining or enlarging the meaning of its words the courts may not subtract therefrom or add thereto. Another equally fundamental rule overlooked is, that where the words of a statute are plain and clearly define its scope and limit, construction cannot extend it."

The language of Mr. Justice SHARSWOOD, in Dame, Seymour & Co.'s Appeal, 62 Pa. 417 (1869), at page 422, is most pertinent: "The moment we depart from the plain words of the statute according to their ordinary and grammatical meaning, in a hunt for some intention founded on the general policy of the law, we find ourselves involved in a 'sea of troubles.' Difficulties and contradictions meet us at every turn."

We believe the learned court below properly construed the section in controversy.

The assignment of error is overruled and the order affirmed.

DISSENTING OPINION BY PARKER, J.:

I am unable to agree with the construction placed on Section 1002 (d) of the Vehicle Code by the majority. It would seem that both the conclusion and the reasoning are unsound. The effect of the decision is to hold that one may not be convicted for a violation of speed limits in a rural section unless the rate of speed is timed for a distance of not less than one-quarter mile by

a peace officer using a motor vehicle equipped with a speedometer tested for accuracy. The decision is placed upon the ground that we are bound by the plain words of the statute, yet in the face of this reasoning the word "may" is held to mean "shall." It will be noted that a speedometer may be used only by a peace officer and that it must have been tested for accuracy. Ultimately accuracy must be determined by a timing over a measured distance. Not alone this, but the speedometer must be operated by a peace officer. The opinion holds that the most accurate timing for a reasonable measured distance by competent proofs would not be sufficient for a conviction.

No sufficient reason has been given for substituting the meaning of "shall" for "may." It would seem, on the other hand, that the word "may" was used advisedly; that the legislature did not intend to interfere with any competent proof of the speed in rural districts, but that speedometers might only be used under the specified conditions. The purpose of the legislation would seem to indicate that the legislature regarded measurement by two persons over a measured distance as more accurate and reliable than a speedometer, and yet the construction given this act would eliminate such proof.

Judge RHODES joins in this dissent.