## Commonwealth v. Haas

*J. P. McNarney,* of *Johnson & McNarney,* for Commonwealth.

*Herbert P. Sorg,* of *Straub, Blatt & Sorg,* for defendant.

RIMER, P. J., eighteenth judicial district, specially presiding, July 23, 1938.—This case came into court upon a petition of defendant who averred that, after a hearing on April 1, 1938, the Secretary of Revenue of the Commonwealth of Pennsylvania suspended his operator's license for a period of 90 days upon an alleged violation of The Vehicle Code of May 1, 1929, P. L. 905, sec. 1002, as amended by the Act of June 5, 1937, P. L. 1718, 75 PS §501. That section fixes the maximum rate of speed for vehicles upon our highways at 50 miles per hour, insofar as it relates to vehicles of the class operated by defendant at the time of the alleged violation. Section 1002 (*d*) of the amended act provides that when the rate of speed of any vehicle is timed on any highway within a business or residence district certain methods requiring the presence of two peace officers shall be required, and then follows with this provision:

"Under all other conditions, the rate of speed shall be timed, for a distance of not less than one quarter (¼) mile, by a peace officer using a motor vehicle equipped with a speedometer tested for accuracy within a period of thirty (30) days prior to the alleged violation."

Similar provisions were being considered by our Superior Court in Commonwealth v. Wolfgang, 120 Pa. Superior Ct. 252. It is true that there the court was considering a criminal action, but the construction there placed upon these provisions is applicable here. Judge Stadtfeld, delivering the opinion of the court, calls attention to the rule that where an offense is created by stat-

ute and the same statute prescribes the penalty or the mode of procedure or anything of the sort, only that which the statute provides can be followed. He follows this by declaring that the purpose of these provisions of The Vehicle Code, supra, was to abolish "speed traps", referring particularly to the Act of 1929, which carried a provision for determining speed violations on a measured stretch of a highway by two peace officers within business or residential districts and that under all other conditions, the rate of speed may be timed, for a distance of not less than one quarter (¼) mile, by a peace officer using a motor vehicle equipped with a speedometer tested for accuracy within a period of 30 days, etc. It will be noted that the latter provision is amended by the Act of 1937, by inserting the word "shall" in place of the word "may" as found in the Act of 1929, so that this general provision now requires that "the rate of speed shall be timed", as above provided.

Judge Stadtfeld concluded that The Vehicle Code, in order to carry out the evident purpose of doing away with speed traps, limited peace officers to the provisions of this code in determining violations of the speed law, and we follow that construction in this case.

The wisdom of such construction is very apparent. Where the element of human judgment or estimate enters into the determination of the speed of motor vehicles, a wide and troublesome field is opened up. To obviate this the element of mechanical test is made an important feature of such determination. It is true that the testimony of one peace officer, if believed, may be sufficient grounds for establishing a violation of this provision in respect to speed, but it is only when he has determined the rate of speed by the use of the only instrument adapted to such determination and in common use, the speedometer. Since the testimony of the peace officer is based upon the showing of this instrument, the act made it essential that it should be reasonably accurate and kept in that condition by reasonably frequent testing. Hence the provision that

the speedometer thus used as the basis of determining the violation must be "tested for accuracy within a period of thirty (30) days prior to the alleged violation." Unless this is established the test fails as not being in accordance with the law creating the offense.

At this point we must briefly refer to the law governing the appeal in this case. The Vehicle Code provides that where the holder of an operator's license has committed any violation of the motor vehicle laws of this Commonwealth (Vehicle Code) and the secretary so finds upon sufficient evidence, he may suspend the privilege granted under such license. It also provides in section 616 that the person whose operator's license has been thus suspended may file his petition within 30 days thereafter in the court of common pleas of the county in which such operator resides, asking for a hearing therein, and such court is vested with jurisdiction "to take testimony and examine into the facts of the case, and to determine whether the petitioner is subject to suspension of operator's license or learner's permit under the provisions of this act." Under the decision of our Supreme Court in Commonwealth v. Funk, 323 Pa. 390, the hearing must be de novo, and, upon the evidence offered, the court must determine whether or not the suspension should stand. This is not in the nature of a criminal proceeding and the Commonwealth is only bound to sustain the charge of the violation by the fair weight of the evidence.

By the fair weight of the evidence in this case it is apparent that the peace officer who testified to the violation was careful and painstaking in playing his part. But no matter how carefully he conducted the test, how truthfully he reported the readings from his speedometer, the case of the Commonwealth must fall unless that speedometer recorded truthfully the rate of speed that defendant's car was traveling during the test. In respect to this the Commonwealth has fixed its own burden by the mandatory provision that, within 30 days preceding the test,

the speedometer used must have been tested for accuracy. This means, of course, that it must reasonably appear that the instrument used was substantially accurate and that the only evidence as to such accuracy is the required test within the period mentioned.

In support of this essential element, the Commonwealth offered only the testimony of the peace officer Rice to the effect that he had had his speedometer tested within 30 days prior to the occurrence in question and that the certificate produced was as to the testing of the speedometer used. The card produced was dated December 16, 1937, and in the following form:

"To whom it may concern:

"The speedometer on this car has been tested and found correct."

This was followed by a memorandum that the owner was the Punxsutawney Motor Police and gave the number of the car and was signed "Punxsutawney Storage Battery Co. per George Colkett." The officer also testified that he had had this speedometer again tested within 30 days after December 16, 1937, and that there were no adjustments necessary at that time, the speedometer being found correct.

This exhibit was objected to by defendant and was admitted subject to that objection in order that the whole of the evidence on the part of the Commonwealth might be considered. The trial judge was of opinion, and so stated at the hearing, that the paper thus offered was not admissible as evidence of a test for accuracy. It is well known and understood that there are scientific and correct mechanical methods of testing speedometers in order to determine their accuracy. Defendant had a right to know whether any such proceeding was had in the alleged test, the character generally of the test, the ability of the person making it, as also the method used. The witness does not even say that the test as made on December 16th established the accuracy of the speedometer. There is

nothing to indicate any authority on the part of Punxsutawney Storage Battery Company to make a test or their ability to make it in any of the recognized standard methods. Defendant had a right to know whether or not the Commonwealth had lived up to its own prescribed rules and to know it by competent and relevant evidence, not mere hearsay.

Therefore, we have come to the conclusion that the Commonwealth has not, by the preponderance of the evidence, established this most essential fact, viz., that the test was made with a speedometer, reasonably certain to be correct, by having been tested for accuracy within the 30-day period preceding its use. Under the evidence submitted the court is impelled to reverse the order of the Secretary suspending the operating privileges of defendant in this case, and the following order will be made.

And now, July 23, 1938, after hearing, the order of the Secretary of Revenue suspending the operating privilege of defendant, Charles Haas, under the operator's license issued for the year 1938 by the Department of Revenue of the Commonwealth of Pennsylvania, for a period of 90 days, is reversed and the operating privilege of said defendant thereunder reinstated and his appeal sustained, costs of these proceedings to be paid by the Department of Revenue of the Commonwealth of Pennsylvania.