## Haskell's Appeal

*Clarence M. Freedman,* for petitioner.

SMITH, P. J., June 13, 1939.—This is an appeal from the action of the Secretary of Revenue of Pennsylvania suspending petitioner's operator's license. Since "the proceedings before the Secretary of Revenue are civil and administrative and not criminal, even though the basis of the action may be the commission of a crime": Commonwealth v. Funk, 323 Pa. 390, 400; and inasmuch as "the language of the section clearly indicates that it is the duty of the court to hear de novo the witnesses of the Commonwealth and the witnesses of the licensee, and, from the testimony taken, to determine anew whether the operator's license should be suspended": Commonwealth v. Funk, supra, at page 399; it necessarily follows that the proceeding before this court is a civil proceeding. Although the statute itself is penal in nature and must be strictly construed, the construction of its meaning may not extend beyond its words, and all doubts concerning its interpretation are to preponderate in favor of the accused: Commonwealth v. Wolfgang, 120 Pa. Superior Ct. 252, 255, 256. "But where an enactment is plain and

sensible, and, according to any meaning, broad or narrow, popular or technical, which may be ascribed to the words, does not apply to the case in hand, it is not permissible for the courts to add or omit words, in order to make it so apply, even though it may be clear to them that the case is as fully within the mischief to be remedied as the cases provided for. This would be, not to construe, but to amend the law": Commonwealth v. Gouger, 21 Pa. Superior Ct. 217, 229. "The moment we depart from the plain words of the statute according to their ordinary and grammatical meaning, in a hunt for some intention founded on the general policy of the law, we find ourselves involved in a 'sea of troubles.' Difficulties and contradictions meet us at every turn": Dame, Seymour & Co.'s Appeal, 62 Pa. 417, 422.

The Vehicle Code of May 1, 1929, P. L. 905, sec. 1002, as amended by the Act of June 5, 1937, P. L. 1718, 75 PS §501, fixes the maximum speed of vehicles on the highways at 50 miles per hour. Section 1002(d), as amended by the Act of 1937, supra, provides that "the rate of speed shall be timed, for a distance of not less than one-quarter (¼) mile, by a peace officer using a motor vehicle equipped with a speedometer tested for accuracy within a period of thirty (30) days prior to the alleged violation."

With these observations of the law, we examine the testimony. At the hearing before the court held February 27, 1939, Harold B. Lentz, the State motor policeman, testified that on October 10, 1938, he followed Haskell, petitioner, for four miles on the Baltimore Pike and that Haskell was going 65 miles per hour; that his speedometer was tested on October 1, 1938, and was correct and he was issued an inspection card. On cross-examination when he was asked:

"Q. Were you present when this speedometer was tested?" he replied:

"A. I couldn't say I was. But one of the men from our barracks took the car to the garage and witnessed the test."

The inspection card was offered in evidence but on objection was properly refused as being inadmissible. Haskell himself testified that on this particular day he was driving 45 miles per hour and knows that he was driving this speed from his ability to gauge his speed as a driver, and that the afternoon before he was arrested he noticed that his speedometer was not working. The court dismissed the appeal but later allowed a reargument which was held May 5, 1939, at which Lawrence Weathers testified that he tests cars for the Department of Highways and on October 1, 1938, he tested a speedometer, no. 31900, belonging to the Department of Highways and found it correct. On cross-examination he testified that some days he does not test any speedometers and on other days he tests five or six; that after a speedometer is inspected a card is given to the officer marked whether the speedometer is correct, fast or slow, and that he can tell only from his records whether he tested this speedometer. On redirect examination he testified that the only record he has to show that the speedometer was tested would be the bill which is sent to the Commonwealth of Pennsylvania, and that the card he gave to the officer when he made the test was made out October 1, 1938, and bears his, Weathers', signature. On recross-examination he testified that he can tell by looking at the card whether the speedometer that was tested bearing this particular number is correct, and that if a speedometer is incorrect he notifies the corporal in charge of the station and the corporal gives the order to take it out and repair it. The inspection card was not offered in evidence at this reargument.

An examination of the evidence shows a failure on the part of the Commonwealth to identify speedometer no. 31900, which was tested, as being the speedometer which was on the car of Lentz. This is very material, without which the suspension cannot stand. Lentz himself did not witness the test and no one was produced who did. Neither does the testimony of Weathers supply this

omission. In addition, the testimony of Weathers as to his recollection of testing speedometer no. 31900 is too indefinite and vague to support a suspension of Haskell's operator's license.

We are therefore of the opinion that the Commonwealth has not proved, by the preponderance of the evidence, that the test was made with a speedometer tested for accuracy within 30 days of the alleged violation.

### Order

And now, to wit, June 13, 1939, the order of this court dated March 1, 1939, dismissing the appeal is rescinded; and the court now enters this order reversing the suspension of the operator's license of Milton B. Haskell imposed by the Secretary of Revenue and directing that the operator's license of Milton B. Haskell be reinstated, and sustaining his appeal.