## Commonwealth v. Twitchell

*Lowell Thomas*, for appellant.

*Edward T. Baker*, for Commonwealth.

MILLER, J., April 22, 1963—This proceeding is an appeal by E. W. Twitchell, Inc. ( appellant, or Twitchell) from a decision of the Board of Finance and Revenue which sustained the action taken by the Department of Revenue and approved by the Department of the Auditor General, settling the franchise tax against appellant for the fiscal year ending May 31, 1959, by which appellant was denied the manufacturing exemption provided in section 21 (b) of the Act of June 1, 1889, P. L. 420, as amended, 72 PS §1871(b).

All facts are stipulated and were filed of record prior to argument, along with a waiver of jury trial.

It appears from the stipulated facts that appellant is a foreign business corporation incorporated in Delaware in 1922, and is engaged in the business of manufacturing paper products, such as automobile seat covers, with its plant located in Philadelphia. Appellant's corporate purposes as set forth in its certificate of incorporation are:

"To manufacture, buy, sell, trade and deal in and engage in, conduct and carry on the business of manufacturing, buying, selling and dealing in paper and paper products of every nature and name.

"To manufacture, buy, sell, deal in, and to engage in, conduct and carry on the business of manufacturing, buying, selling, and dealing in goods, wares and merchandise of every class and description; . . ."

On October 25, 1933, Twitchell registered and qualified to do business in Pennsylvania by filing with the Secretary of the Commonwealth the necessary application and, as then required, a copy of its Delaware certificate of incorporation, which set forth, inter alia, the foregoing corporate purposes. The Secretary of the Commonwealth thereupon issued to appellant its certificate of authority by which it was authorized "to transact in the Commonwealth of Pennsylvania the business of wholesale paper merchants." This language was all that appeared in appellant's certificate of authority pertaining to its corporate purpose, and no specific reference was made to any manufacturing purpose.

It is further stipulated, and there is no question, that Twitchell was engaged in carrying on manufacturing in Pennsylvania throughout the taxable year in question.

The sole issue involved in this proceeding is whether appellant qualifies for the manufacturing exemption provided in the franchise tax law as set forth in section

21 (b), 72 PS §1871 (b), the applicable portion being quoted herewith (act in effect for tax year in question) :

"(b) Every foreign corporation [subject to the franchise tax] . . . shall . . . pay into the treasury of the Commonwealth annually, . . . a franchise tax at the rate of five mills upon a taxable value to be determined in the following manner. The actual value of its whole capital stock . . . shall be ascertained in the manner prescribed in the twentieth section of this act, and shall then be divided in three equal parts.

"(1) Of one third, such portion shall be attributed to business carried on within the Commonwealth, as shall be found by multiplying said third by a fraction, whose numerator is the value of the taxpayer's tangible property not actually and exclusively used in manufacturing, situated within the Commonwealth, and whose denominator is the value of all the taxpayer's tangible property wherever situated.

"(2) Of another third, such portion shall be attributed to business carried on within the Commonwealth, as shall be found by multiplying said third by a fraction, whose numerator is the expenditures of the taxpayer for wages, salaries, commissions, or other compensation to its employes not exclusively engaged in manufacturing in this Commonwealth and assignable to this Commonwealth as hereinafter provided, and whose denominator is the total expenditures of the taxpayer for wages, salaries, commissions, or other compensation to all its employes.

"(3) Of the remaining third, such portion shall be attributed to business carried on within the Commonwealth, as shall be found by multiplying said third by a fraction, whose numerator is the amount of the taxpayer's gross receipts from business not strictly incident or appurtenant to manufacturing in this Com-

monwealth assignable to this Commonwealth as hereinafter provided, and whose denominator is the amount of the taxpayer's gross receipts from all its business. For the purpose of this section, gross receipts shall not include receipts from the sale, redemption, maturity or exchange of securities, except those held by the taxpayer primarily for sale to customers in the ordinary course of its trade or business.

"The sum of the amounts, determined in accordance with the foregoing three rules, shall be the taxable value. . . .

"Notwithstanding the foregoing provisions of this subsection (b), the franchise tax of five mills imposed by subsection (b) on reports filed for the calendar years one thousand nine hundred forty-seven, . . . and one thousand nine hundred fifty-seven, and for fiscal years beginning in the calendar years one thousand nine hundred forty-seven, . . . and one thousand nine hundred fifty-seven, shall apply to the taxation of corporations, limited partnerships and joint-stock associations *organized for manufacturing purposes* excepting companies engaged in the distilling of liquors, without excluding from the numerators of the applicable fractions tangible property actually and exclusively used in manufacturing, compensation of employes exclusively engaged in manufacturing, and gross receipts from business strictly incident or appurtenant to manufacturing.

"After said eleven year period the provisions of this subsection shall apply to the taxation of corporations, limited partnerships and joint-stock associations *organized for manufacturing purposes.*" (Italics ours.)

The issue may be stated briefly as follows: In the computation of its franchise tax liability, shall a foreign corporation be denied the manufacturing exemption

because its certificate of authority granted by the Secretary of the Commonwealth for the conduct of its corporate business in Pennsylvania fails to disclose a manufacturing purpose, even though its certificate of incorporation issued in the domiciliary State and filed with the Secretary sets forth a manufacturing purpose and the foreign corporation is in fact engaged in manufacturing within the Commonwealth?

This question presents a case of first impression, there apparently being no decisional authority directly on point. The issue is a narrow one, and will turn upon the construction to be accorded the phrase "organized for manufacturing purposes", and more particularly, the word "organized", as used in the franchise tax act.

Appellant argues that "organized" is synonymous with "incorporated", and that it was clearly incorporated in the State of Delaware for manufacturing purposes, which purposes are admittedly pursued in this Commonwealth. On the other hand, the Commonwealth contends that "organized" means, or should mean, "organized in Pennsylvania", which, under section 1004(7) of the Pennsylvania Business Corporation Law of May 5, 1933, P. L. 364, as amended, 15 PS §2852-1004(7), includes a certificate of authority disclosing a manufacturing purpose.

It appears that when our Supreme Court has been required to construe the word "organized" with reference to corporations, the conclusions have generally sustained Twitchell's position, rather than the Commonwealth. Thus, in Commonwealth v. William Mann Co., 150 Pa. 64 (1892), the issue was whether a domestic manufacturing company, incorporated under the general corporation act of 1874 for the purpose of manufacturing blank books and stationery, could qualify for the manufacturing exemption from capital stock tax when a portion of its business was not manufacturing. Under the act then in effect the exemption

was limited to corporations "organized *exclusively* for manufacturing purposes." The Court held that the corporation was entitled to the exemption with respect to the portion of its business which was in fact manufacturing. In the course of its opinion the Court at pages 70-71 discussed at length the meaning of the word "organize" in the following terms:

"To organize is to furnish with organs. An organ is defined to be an instrument or medium by which an action is performed or an object accomplished. The medium by or through which a corporation can alone act or accomplish the object for which it was created is the officers provided for in the law of its being. Hence it is organized when these officers have been appointed and taken upon themselves the burden of their offices; it is then furnished with organs; endowed with capacity for the functions of life: Webster; qualified for the exercise of its appropriate functions: A. & E. Encyc. of Law. And this is the sense in which the word *'organize'* is used in statutes providing for the incorporation of companies for various purposes: Act of Jan. 26, 1849, P. L. 11, §3; Act of Feb. 19, 1849, P. L. 80, §3; Act of April 16, 1850, P. L. 478, §7; Act of April 12, 1855, P. L. 217, §1; Act of March 11, 1857, P. L. 77, §3; Act of April 8, 1861, P. L. 259, §1. In clause 4 of §38 of the corporation Act of 1874, P. L. 100, the word *'organized' is used in a more comprehensive sense, as including incorporation,* and properly so because the appointment of officers becomes effective eo instanti with the incorporation, and under that Act neither could take place without the other. A corporation being thus organized is of course organized for a purpose, not aimlessly and indefinitely, but necessarily for a purpose which it has capacity to accomplish. Being the creature of law it has capacity to accomplish that only which it is expressly or by necessary implication authorized by its charter to do: Commonwealth v. E. & N. E.

Railroad Co., 27 Pa. 339. The defendant's charter authorized it to manufacture blank books and stationery, and, what may be considered necessary incidents to that business, to print, lithograph and sell its products. Nothing more being expressed, everything else was excluded. It was therefore organized exclusively for manufacturing purposes, and as it was found to have been actually carrying on manufacturing within the state during the tax year, it was within the proviso exempting manufacturing companies from taxation." (Italics ours.)

The same phrase was again before the Supreme Court in Commonwealth v. Westinghouse Electric & Manufacturing Co., 151 Pa. 265 (1892). In this case the provisions of the special act under which the corporation was incorporated did not expressly authorize the corporation to engage in manufacturing, and for this reason the Commonwealth refused to grant the manufacturing exemption notwithstanding the fact that the corporation was actually engaged in manufacturing. In sustaining the Commonwealth's contention the Court stated at page 275:

". . . In Commonwealth v. William Mann Company, 150 Pa. 64, it was held that a corporation is organized when the agents or officers by which alone it can perform its appropriate functions have been appointed and taken upon themselves the burden of their offices, and that it is then organized for the purposes authorized by the law of its creation. It is necessarily organized for all of its lawful purposes, because, until organization, it cannot, from mere incapacity to perform any corporate act, abdicate or surrender any of its franchises. Whether it could lose by mere non-user, or abdicate or surrender any part of its franchises after organization is not a question of any moment in this cause. Neither the loss, or surrender of franchises granted, nor the usurpation of others not granted could change the fact

that this defendant corporation was organized for the purpose, among other things, of making purchases and sales of and investments in the securities of other companies. It cannot, therefore, be said to have been organized exclusively for manufacturing purposes, and hence is not within the proviso to the twenty-first section of the revenue act of 1889."

The Pennsylvania Supreme Court has consistently applied the principle that "organization" connotes "incorporation", e. g., Commonwealth v. American Car and Foundry Co., 203 Pa. 302 (1902), and Commonwealth v. Filbert Paving & Construction Company, 229 Pa. 231 (1910). In the American Car and Foundry case, the issue was whether the capital stock tax exemption in favor of corporations "organized for manufacturing purposes" was available to a foreign corporation the same as to a domestic corporation. The then capital stock tax act made no differentiation in the application of its exemption provisions between foreign and domestic corporations, but under the Act of April 22, 1874, P. L. 108, registration procedures were imposed upon foreign corporations as a prerequisite to the conduct of business in Pennsylvania. In that case, the Supreme Court adopted the opinion of this court, delivered through our late President Judge Simonton, which held that the Legislature in the enactment of the capital stock tax act had not indicated a distinction between foreign and domestic corporations, and that "organized" referred, inter alia, to the purposes for which the foreign corporation was incorporated in its State of domicile. The court reached its conclusion by construing the corporation's New Jersey charter and the language of the tax act itself, which appeared to be free from ambiguity. Principles of construction cited in earlier Pennsylvania Supreme Court cases were found to be apposite, and are hereafter quoted because they are believed to be applicable to this determination. For

example, the court approved this language from Bradbury v. Wagenhorst, 54 Pa. 180, 182 (1867):

"Whatever may have been the legislative thought, no ambiguity exists in what they have said, and when the words of a statute are plainly expressive of an intent, the interpretation must be in accordance therewith."

Likewise, approval was given to this statement found in Dame, Seymour & Co.'s Appeal, 62 Pa. 417, 422 (1870):

"The moment we depart from the plain words of the statute according to their ordinary and grammatical meaning, in a hunt for some intention founded on the general policy of the law, we find ourselves involved in a 'sea of troubles.' Difficulties and contradictions meet us at every turn."

The Filbert Paving Co. case similarly involved a foreign corporation, seeking the manufacturing exemption from imposition of the capital stock tax. The court held that the appellant's business of manufacturing cement floors, asphalt floors, pavements, roadways and structural concrete constituted primarily the pursuit of a manufacturing purpose, entitling it to the exemption. In reaching this conclusion, the court at page 234 made this statement:

"While the purpose stated in the charter is not conclusive of the nature and character of the business to be transacted, it does *primarily* indicate the purpose for which the corporation is created. Of course it may be made to appear either in point of fact or as a matter of law that a company so incorporated is not what it purports to be, *but the burden rests upon those who challenge the primary purpose stated in the certificate of incorporation to show that it is something different."* (Italics ours.)

In Filbert Paving, as in American Car and Foundry, the court considered only the purpose clause of the cor-

porate charter issued in the State of domicile, and no reference was made to registration in Pennsylvania.

Commonwealth v. McGlinn Distilling Co., 265 Pa. 346 (1919), involved a converse factual situation to the instant case, but it nevertheless furnishes a corollary for the appellant's position. In that case, the Act of July 15, 1897, P. L. 292, provided that corporations "organized and incorporated for the purpose of distilling liquors and selling the same at wholesale shall constitute a separate class for the purpose of taxation" and imposed a ten mill tax rate on such corporations, whereas a rate of five mills applied to business corporations not organized for distilling purposes. The McGlinn Distilling Co. was a Delaware corporation registered and qualified to do business in Pennsylvania and, although expressly authorized by its Delaware charter to engage in the business of distilling, it did not in fact carry on the distilling business either in Pennsylvania or elsewhere. The Commonwealth contended that the McGlinn Distilling Co. was subject to the ten mill rate because according to its articles of incorporation it was "organized" for the purpose of distilling. The corporation claimed it was not subject to the higher rate because it was not actually engaged in distilling. In sustaining the Commonwealth's contention the Supreme Court stated: (pp. 350-351)

"Appellant contends, however, that it is not within the classification of corporations made by the Act of 1897, because 'it was not organized and incorporated for the purpose of distilling liquors'; but we cannot so agree. While 'organized' is a word susceptible of different uses, yet, in the phrase 'organized and incorporated,' it has an established import. ' "Organize" or "organization," as used in reference to corporations, has a well understood meaning, which is the election of officers, providing for the subscription and payment of the capital stock, the adoption of by-laws, and such

other steps as are necessary to endow the legal entity with capacity to transact the legitimate business for which it was created' (Words and Phrases, vol. 6, p. 5053) ; and, in our law, the word has been held to include within its meaning 'incorporation.' In Com. v. Westinghouse Elec. & M. Co., 151 Pa. 265, 275, citing Com. v. Wm. Mann Co., 150 Pa. 64, we said that 'a corporation is organized when the agents or officers by which alone it can perform its corporate functions have been appointed and taken upon themselves the burden of their offices, and that it is then organized for the purposes authorized by the law of its creation.' The court below properly held the present company was 'organized and incorporated for the purpose of distilling liquors and selling the same at wholesale,' and, therefore fell within the class fixed by the Act of 1897."

McGlinn Distilling Co. was thus found to be taxable as a distiller because it was "organized" for that purpose in the State of Delaware, even though it was not effectuating that purpose in Pennsylvania. The Supreme Court's opinion made no reference to registration by the corporation to do business in Pennsylvania.

There is nothing in the instant franchise tax law to indicate that the Legislature intended "organized" to have one meaning as applied to domestic corporations and an additional meaning when applied to foreign corporations. The exemptive language of the tax act is devoid of any language that might be construed as referring to registration by a foreign corporation. It may reasonably be concluded that if the Legislature had intended what the Commonwealth argues, it would certainly have either referred specifically to compliance with the registration regulations imposed upon foreign corporations by section 1001, et seq., of the Business Corporation Law, supra, or in some other way indicated the distinction which the Commonwealth would have us draw.

Certain principles of statutory construction also support this conclusion. As earlier discussed, the word "organized" as construed by the Supreme Court with reference to corporations would seem to encompass only the procedures attendant to initial incorporation in the state of domicile. The legislative history of the phrase "organized for manufacturing purposes" gives additional substance to this construction.

The franchise tax law was enacted by section 1 of the Act of May 16, 1935, P. L. 184, as an amendment to the capital stock tax, section 21 of the Act of June 1, 1889, P. L. 420. The single term "organized for manufacturing purposes" applied to domestic and foreign corporations alike prior to 1935, because prior thereto, both were subject to the same tax, i. e., the capital stock tax, and as to both the term referred to the articles of incorporation.

The term was specifically so applied in the case of a foreign corporation in American Car and Foundry, supra, where the court upheld the exemption of the foreign corporation engaged in manufacturing in Pennsylvania because it was ". . . chartered under the laws of the state of New Jersey for the purpose of the manufacture and sale of railway cars." According to the Supreme Court opinion, the foreign corporation had complied prior to 1900 with the terms of the Act of April 22, 1874, entitled "An act to prohibit foreign corporations from doing business in Pennsylvania, without having known places of business and authorized agents", and had received from the Secretary of the Commonwealth his certificate showing compliance with said act. The Act of 1874, P. L. 108, required foreign corporations to file a statement with the Secretary of the Commonwealth showing, inter alia, "the title and object of said corporation", and the Secretary of the Commonwealth was required to issue a certificate, showing compliance, which was to be held

available for public inspection by the corporation. The statement of facts in the American Car and Foundry case does not quote the "objects" of the corporation as set forth in its statement filed with the Secretary of the Commonwealth, presumably because the court did not deem such a reference necessary to its determination. It appears that the court was guided solely by reference to, and placed its decision squarely on, the quoted provisions from the appellant's articles of incorporation. Although the instant issue of articles versus certificate was apparently not involved, there is no question that the Pennsylvania Supreme Court indicated that the term "organized for manufacturing purposes" had reference to the articles of incorporation of a foreign corporation. The same conclusion was reached in both Filbert Paving and McGlinn, supra.

When the franchise tax was enacted in 1935 as an amendment to section 21 of the Act of 1889, the capital stock tax became subsection (a), the franchise tax was added as a new subsection (b), and the "organized for manufacturing purposes" clause was used without change in the same text and the same section as previously, but under a new designation as subsection (c), and the only change made in this section was to suspend the manufacturing exemption for the years 1935 and 1936, and to restore it thereafter. In 1937, the manufacturing exemption was suspended indefinitely, and by the Act of May 27, 1943, P. L. 762, further amendments were made involving the term "organized for manufacturing purposes". The term was added to subsection (a) imposing the capital stock tax applicable only to domestic corporations, but it was completely deleted from subsection (c). Under this amendment, domestic corporations had to be "organized for manufacturing purposes" and actually engaged in manufacturing to be entitled to exemption.

However, foreign corporations were entitled to the exemption, effective January 1, 1945, or "at the end of hostilities", if actually engaged in manufacturing in Pennsylvania. Under the 1943 Act, the term "organized for manufacturing purposes" had no application to foreign corporations.

By the Act of May 14, 1947, P. L. 224, the manufacturing exemption was suspended for 1947 and 1948. However, in restoring the exemption to become effective after 1948, in the case of foreign corporations, subsection (c) was amended to again require foreign corporations to be "organized for manufacturing purposes" to qualify for the exemption. No later amendment made any change in the term "organized for manufacturing purposes" for either the capital stock or franchise tax, except the Act of August 23, 1961, P. L. 1100, which added "processing" to the manufacturing exemption, and set forth a lengthy definition of "processing", but gave no definition or explanation of the term "organized for manufacturing purposes". In the Act of 1947, when it restored the requirement that foreign corporations be "organized for manufacturing purposes" in order to qualify for the exemption, the legislature used the exact words which the Supreme Court 45 years previously, and uniformly ever since, construed to refer to the articles of incorporation of foreign corporations. This use of the term by the legislature in the 1947 Act, following the decisional and statutory history above summarized, permits us to invoke the familiar rule of statutory construction stated in section 52 of the Statutory Construction Act of May 28, 1937, P. L. 1019, 46 PS §552, which states:

"In ascertaining the intention of the Legislature in the enactment of a law, the courts may be guided by the following presumptions among others: . . .

"(4) That when a court of last resort has construed the language used in a law, the Legislature in subsequent laws on the same subject matter intend the same construction to be placed upon such language."

The Commonwealth would invoke another rule of statutory construction, found in section 58 of the Statutory Construction Act, supra, 46 PS §558, which requires that "provisions exempting persons and property from taxation" be strictly construed. However, the same section of the Statutory Construction Act likewise requires strict construction of "provisions imposing taxes". Thus, the strict construction injunction appears to favor both parties, and becomes moot. Still another test of statutory construction favors the appellant, this being based upon section 51 of the Statutory Construction Act, 46 PS §551, which provides:

"The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the Legislature . . .

"When the words of a law are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.

"When the words of a law are not explicit, the intention of the Legislature may be ascertained by considering, among other matters . . . (4) the object to be attained; (5) the former law, if any, . . . (8) legislative and administrative interpretations of such law."

Obviously, the purpose of the manufacturing exemption is to provide incentives to business enterprise to establish and maintain manufacturing facilities in this Commonwealth. This is a much publicized purpose, and we believe it to be a proper subject of judicial notice. The accomplishment of this purpose should not be thwarted, and this intended tax benefit denied, because a foreign corporation which was originally or-

ganized in its domiciliary State for manufacturing purposes, and which is actually engaged in manufacturing in the Commonwealth, fails to comply with a regulatory provision of the Business Corporation Law. It has not been suggested that Twitchell evaded any other responsibility to the government or citizens of this Commonwealth by the omission of a manufacturing purpose clause from its certificate of authority. Likewise, no serious deception has been practiced upon either our State officials, nor upon those who have dealt with this corporation, because the Delaware certificate of incorporation setting forth the manufacturing purpose in detail has been a matter of public record ever since appellant acquired authority to do business in Pennsylvania.

The principles of statutory construction also require us to construe the words of a statute "according to their common and approved usage": section 33 of the Statutory Construction Act, supra, 46 PS §533. The Supreme Court has concluded that "organized" refers to the original process of incorporation; the common and approved usage of the word could logically have no other connotation. Webster's Third New International Dictionary, 1961 Edition (unabridged), suggests this meaning for "organize": "to arrange or constitute into a coherent unity in which each part has a special function or relation; to unify into a coordinated, functioning whole." In this context, a foreign corporation must obviously be "organized" before it comes to Pennsylvania to transact business; it cannot register here unless it is "organized" elsewhere. Under this construction, and we cannot logically find any other, Twitchell is "organized for manufacturing purposes" and must be so regarded for tax purposes. It appears that all rules of statutory construction favor the appellant, rather than the Commonwealth.

Further, as we have previously refused to do in Commonwealth v. American Gas Company, 54 Dauph. 115, affirmed 352 Pa. 113 (1945), we cannot accord to the Business Corporation Law the status of a taxing statute. It is a regulatory act pure and simple. Although we were advised at argument that the defective certificate of authority has now been amended by Twitchell so as to include the statement of a manufacturing purpose, enforcement and remedial provisions were previously available to the Commonwealth under sections 1013 and 1014 of the Business Corporation Law, which provisions apparently were never invoked. Twitchell's failure to follow completely the registration procedure applicable to foreign corporations should have resulted in notification by the Department of Revenue to the Department of the Commonwealth to cite Twitchell for compliance under section 1013 of the Business Corporation Law. But it should not have resulted in a denial of the manufacturing exemption. As a corollary to the American Gas Company rule, a taxing statute should not be used as a substitute for a statute which regulates foreign corporations.

The Commonwealth's final contention is that a grant of the manufacturing exemption to appellant would be unconstitutional because it would discriminate against domestic corporations in favor of foreign corporations, and thus violate the tax uniformity clause of the Pennsylvania Constitution, Article IX, section 1, and the equal protection clause found in section 1 of the Fourteenth Amendment to the United States Constitution. However, this argument ignores the construction which our Supreme Court has placed upon the word "organized" as it refers to corporations. Consistently, it has been held that this word refers to the original incorporation process, whether the corporation be for-

eign or domestic, and such construction is not lacking in uniformity. Twitchell, as we have heretofore concluded, is "organized for manufacturing purposes", as required by the taxing statute. There was a defect in its registration process, which did not amount to fraud or prejudice to either the government or the citizens of this Commonwealth. The regulatory provisions of the Business Corporation Law could have been invoked, just as against a domestic corporation that fails to comply with the law. But neither the uniformity nor equal protection clauses require us to regulate by taxation.

A contrary view might actually result in discrimination against a foreign corporation because we would be adding a requirement to tax exemption for a foreign corporation which the legislature did not see fit to include in the tax statute. If the exemption were denied Twitchell, this would be tantamount to a conclusion that domestic corporations need only be "organized for manufacturing purposes", but that foreign corporations must be "organized for manufacturing purposes in the State of domicile and registered in the Commonwealth of Pennsylvania for manufacturing purposes." The legislature did not so provide; no other court has as yet seen fit to add this definition or requirement to the taxing statute; the principles of statutory construction do not support such a conclusion; and the legislature's words under their common and approved usage neither require nor permit us to amend the tax statute by decision.

We, therefore, enter the following

### Order

And now, April 22, 1963, the appeal of E. W. Twitchell, Inc., from the decision of the Board of Finance and Revenue is sustained. Judgment shall be entered in favor of the Commonwealth and against the appellant

in the sum of $1,405.72, which after entry shall be marked satisfied, same having already been paid by appellant; the proper fiscal officers of the Commonwealth, particularly the Secretary of Revenue and the Auditor General, are directed to correct their records pertaining to appellant so as to relieve it from further liability for payment of franchise tax for its fiscal year ended May 31, 1959, unless exceptions are filed hereto within 30 days from service hereof. The prothonotary shall notify the parties or their counsel of this order forthwith.